OPINION OF THE COURT
 

 Meyer, J.
 

 The Statute of Limitations for personal injury caused by the malfunctioning of a prosthetic or contraceptive device implanted or inserted into the human body runs from the date of the injury resulting from the malfunction, not necessarily from the date of implantation or insertion. In Martin v Edwards Labs, the order of the Appellate Division should, therefore, be reversed and the order of the Supreme Court on reargument reinstated; in Lindsey v A. H. Robins Co. the order of the Appellate Division should be affirmed.
 

 I
 

 In Martin, an artificial aortic valve was implanted in the plaintiff’s decedent, Michael Martin, on June 7, 1976. The valve was manufactured by defendant Edwards Laboratories from materials supplied by the remaining defendants. Michael Martin died on May 15, 1979. The action was commenced on June 1, 1981.
 

 The complaint asserted causes of action for personal injury and for wrongful death, based on product liability, breach of implied warranty and negligence. The wrongful death causes of action are not involved in this appeal. The personal injury cause of action alleged that Teflon particles originating in the artificial heart valve lodged in the decedent’s brain, causing or contributing to the cerebral infarctions and hemorrhages, which ultimately resulted in his death.
 

 Defendants moved to dismiss the complaint as time barred. Supreme Court granted the motion, but plaintiff moved for reargument, presenting as part of her papers the
 
 *423
 
 examination before trial of the pathologist who performed the autopsy on Michael Martin, in which the doctor testified that Teflon material identical to that in the valve had been found in Martin’s brain and that in his opinion the breakdown of the valve and accumulation of Teflon in decedent’s brain began within months of his death. On reconsideration, Supreme Court reinstated the complaint, holding that the personal injury action accrued on the date the valve began to disintegrate. On appeal, the Appellate Division modified the Supreme Court order and dismissed the personal injury cause of action, holding that it accrued on implantation of the valve. The Appellate Division order is final
 
 (Ratka v St. Francis Hosp.,
 
 44 NY2d 604, 609-610) and is before us as a result of the Appellate Division’s modification on the law.
 

 In Lindsey, a Daikon Shield, manufactured by defendant A. H. Robins Company, Inc., was inserted by defendant Dr. Joel Ullman into the uterus of plaintiff Joyce Lindsey on March 29, 1971. The shield is a plastic circle to which is attached a braided string. The shield serves the continuing function, so long as it remains in the uterus, of preventing conception. The braided string protrudes from the cervix to let the user know that the shield remains in place and for use in removal of the shield.
 

 In March, 1973, Ms. Lindsey developed a pelvic infection, resulting in permanent damage to her ovaries and fallopian tubes and in consequence can no longer bear children.
 

 In October, 1975, she began an action in the Federal court against the doctor and the manufacturer but discontinued it on consent. The present action brought in State court on behalf of plaintiff and her husband was begun by service on defendant Robins on February 5, 1976 and on defendant Ullman on February 13, 1976. In April, 1981, defendants moved to dismiss the complaint as barred by limitations. Plaintiffs cross-moved for leave to serve an amended complaint including a cause of action for fraud on the part of Robins in concealing the defective and dangerous nature of the shield and in opposition to the motion to dismiss presented the affidavit of a physician who had reviewed X rays and medical and hospital reports of Ms.
 
 *424
 
 Lindsey and stated as his opinion that her “injury first occurred in the beginning of March 1973, a few days or weeks before” her pelvic infection was diagnosed, that the shield permitted entrance of bacteria into the uterus in March, 1973 and that until then no injury had occurred to plaintiff due to the shield.
 

 Special Term granted the motion to dismiss as to Robins but as to Ullman granted it only with respect to acts occurring more than three years prior to service of the Federal complaint. It denied plaintiffs’ cross motion for leave to serve an amended complaint. Plaintiffs appealed to the Appellate Division, which modified by denying Robins’ motion to dismiss but affirmed the denial of plaintiffs’ cross motion. Plaintiffs and Robins appeal to us by leave of the Appellate Division.
 

 The two cases thus present a common question: on what date does the three-year period of limitations applicable to product liability actions (CPLR 214, subd 5;
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395) begin to run with respect to a product inserted or implanted in but not assimilated by the body and intended to have a continuing function? Defendants argue that the action accrued on implantation or insertion of the device, as in cases where a harmful substance is injected, ingested or inhaled into the body
 
 (Matter of Steinhardt v Johns-Manville Corp.,
 
 54 NY2d 1008, app dsmd and cert den 456 US 967 [inhalation of asbestos];
 
 Reis v Pfizer, Inc.,
 
 48 NY2d 664 [ingestion of oral polio vaccine];
 
 Thornton v Roosevelt Hosp.,
 
 47 NY2d 780 [injection of carcinogenic chemical compound];
 
 Schwartz v Heyden Newport Chem. Corp.,
 
 12 NY2d 212, cert den 374 US 808 [injection of carcinogenic substance]; see
 
 Schmidt v Merchants Desp. Transp. Co.,
 
 270 NY 287 [inhalation of dust]). Plaintiffs argue that the time to sue commences when the injury from the breakdown of the product occurs, as is the case with a product not implanted or inserted in the body
 
 (Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395,
 
 supra).
 

 The Lindsey appeal raises the additional questions whether plaintiffs’ evidentiary proof is sufficient, in any event, to establish a malfunction within three years prior to suit and whether plaintiffs’ motion to amend the complaint should have been granted.
 

 
 *425
 
 We conclude that the limitations period begins with the injury-causing malfunction of the product; in Martin, when the fragments separated from the valve; in Lindsey, when the bacteria which caused the infection entered the uterus. In Lindsey we hold further that the physician’s affidavit was sufficient to establish a triable issue of fact and that plaintiffs’ motion to amend the complaint was untimely.
 

 II
 

 When limitations begin to run “depends on a nice balancing of policy considerations”
 
 (Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d,
 
 supra,
 
 at p 403) reflecting the manufacturer’s interest in defending a claim before his ability to do so has deteriorated through passage of time, on the one hand, and, on the other, the injured person’s interest in not being deprived of his claim before he has had a reasonable chance to assert it
 
 (id.; Caffaro v Trayna,
 
 35 NY2d 245, 250-252;
 
 Flanagan v Mount Eden Gen. Hosp.,
 
 24 NY2d 427, 429-431).
 

 In
 
 Schmidt v Merchants Desp. Transp. Co.
 
 (270 NY 287, 300, 301,
 
 supra),
 
 we recognized that “a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose”, but held that when substantial injury may result from the wrong, liability accrues even though the injured party be ignorant of the existence of the wrong or injury and, therefore, that a cause of action for negligence in causing plaintiff to inhale dust and, as a result, to contract a lung disease more than three years later, accrued upon inhalation.
 

 Schwartz v Heyden Newport Chem. Corp.
 
 (12 NY2d 212,
 
 supra)
 
 applied the
 
 Schmidt
 
 rationale to the insertion of a radiopaque but carcinogenic substance into plaintiff’s nostrils some 14 years before the cancer developed, notwithstanding arguments predicated on defendant’s continuing duty to warn and for a discovery rule. The
 
 Schwartz
 
 opinion posited that “perhaps the possibility of feigned cases against unprepared defendants and the difficulties of proof in meritorious cases led to a [legislative] decision that society is best served by complete repose after a
 
 *426
 
 certain number of years even at the sacrifice of a few unfortunate cases” (12 NY2d, at p 218). And in
 
 Thornton v Roosevelt Hosp.
 
 (47 NY2d 780,
 
 supra), Reis v Pfizer, Inc.
 
 (48 NY2d 664,
 
 supra)
 
 and
 
 Matter of Steinhardt v Johns-Manville Corp.
 
 (54 NY2d 1008,
 
 supra)
 
 we have reaffirmed the rule that the time to sue for injuries resulting from inhalation, ingestion or injection of harmful substances runs from the last exposure to the substance, not from discovery of the injury.
 

 In
 
 Flanagan v Mount Eden Gen. Hosp.
 
 (24 NY2d 427,
 
 supra),
 
 however, confronted with the claimed negligence of a physician in leaving in his patient’s body foreign objects (surgical clamps) not assimilated by the body as are inhaled, ingested or injected materials, we adopted a discovery rule, notwithstanding that had the
 
 Schmidt
 
 substantial injury rationale been applied the cause of action would have been held to accrue at the time of the negligent failure to remove the objects. We did so because a fair assessment of the policy balance dictated the result: the clamps retained their identity within the patient’s body, so that plaintiff could not feign the claim
 
 {id.,
 
 at p 430) and the defendant was not unduly handicapped in defending though the claim was otherwise stale
 
 {id.,
 
 at p 431); there was no possible causal break between negligence and injury
 
 {id.,
 
 at p 430); and the claim did not raise questions of credibility or rest on professional diagnostic judgment or discretion
 
 {id.,
 
 at p 431). Under those circumstances the burden of defending a “stale” claim was not sufficient justification for the harsh consequences to the injured claimant were the
 
 Schmidt
 
 rationale applied.
 

 The third line of cases germane to the determination here to be reached deals with products which remain entirely outside the body but through defect cause personal injury to a remote user long after being sold by the manufacturer. Our conclusion in
 
 Victorson v Bock Laundry Mach. Co.
 
 (37 NY2d 395,
 
 supra),
 
 that the Statute of Limitations ran not from the date of sale but from the time of injury, was predicated upon two considerations. Prior to the injury, the user of the product had no cause to complain, nor, lacking privity with the manufacturer, any ground upon which a claim could be made
 
 {id.,
 
 at p 403).
 
 *427
 
 “To hold that it somehow came into being prior thereto would defy both logic and experience”
 
 (id.).
 
 Furthermore, the age of the claim and consequent problems of proof disadvantaged not only the manufacturer but also the plaintiff who to succeed had to prove that the defect existed at the time it left the manufacturer’s plant
 
 (id.,
 
 at p 404).
 

 In the instant cases we deal with products intended to be implanted or inserted in, but not to be assimilated by, the human body and there to remain, until removed for repair or other reason, in order to perform a continuing function. There is no need on the recipient’s side of the equation for a discovery rule as in foreign objects cases, for the implantation or insertion is with the recipient’s knowledge and consent, knowledge which he or she can pass on to a physician seeking to diagnose the cause of later developing bodily problems and which, under normal circumstances, will include instructions concerning when repairs may be required or replacement parts have to be inserted. But, on the other hand, to protect the manufacturer by a date of insertion or implantation rule is both unrealistic and unnecessary. In the inhaled, ingested or injected substance cases in which such a rule does apply, the forces of harm are inexorably set in motion when the substance enters and is assimilated into the body. An implanted or inserted device intended to perform a continuing function, to the contrary, causes no injury until the product malfunctions. Until that time the recipient, like the remote user in
 
 Victorson (supra),
 
 has no cause to complain. If through malfunction the product is thought to have caused harm, it can in most cases be removed and examined to ascertain whether in fact it malfunctioned and, if so, whether that was the cause of the harm. Thus, again like the remote user situation considered in
 
 Victorson,
 
 the age of the claim is no greater disadvantage to the manufacturer than it is to the recipient. Credibility thus plays a lesser part in the determination of the claim than it does with assimilated substances, and though complicated medical questions may be involved and professional diagnostic judgment implicated, that normally will concern only recent events rather than the remote implantation. Moreover, because of the availability of the product, the danger of feigned or frivolous claims will be much less.
 

 
 *428
 
 We conclude, therefore, that the proper rule to be applied with respect to products implanted or inserted in the human body is neither time of implantation or insertion nor time of discovery, but
 
 Victorson’s
 
 date of injury rule, which will most often be the date when the product malfunctions.
 
 *
 
 Thus, in Martin, the injury-causing malfunction is the disintegration of the artificial heart valve and the entry of its Teflon particles into the bloodstream; in Lindsey, the unintended introduction of infectious bacteria into the uterus. In each case the plaintiff asserts that the critical event occurred less than three years prior to the commencement of the action and has presented proof in evidentiary form sufficient to establish a triable issue of fact. The complaints should not have been dismissed, therefore.
 

 Ill
 

 Defendant in Lindsey argues that plaintiffs made an inadequate showing that the injury occurred less than three years prior to suit. The argument overlooks the fact that it is defendant’s obligation to prove that the injury occurred more than three years prior to commencement of the action (CPLR 3018, subd [b];
 
 Los Angeles Inv. Securities Corp. v Joslyn,
 
 279 NY 734, affg 254 App Div 711, affg 158 Misc 164, 169-170, mot for rearg den 280 NY 570;
 
 Connell v Hayden,
 
 83 AD2d 30, 39;
 
 Beugger v Ashley,
 
 161 App Div 576, 581;
 
 Lindsay v Ortho Pharm. Corp.,
 
 637 F2d 87, 95; see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3018.14; 2 Carmody-Wait 2d, NY Prac, § 13.287; 1 Weinberger, NY Products Liability, § 11.10). The physician’s
 
 *429
 
 affidavit establishes an injury causally related to defendant’s product and sufficiently meets plaintiffs’ obligation in response to the motion of going forward with evidence that injury occurred within three years before suit. Defendant may be able on trial to establish that the infection-causing bacteria entered plaintiff’s uterus more than three years before suit or through some other cause but is not in the present posture of the action entitled to summary judgment
 
 (Lindsay v Ortho Pharm. Corp., supra; Matter of Steinhardt v Johns-Manville Corp.,
 
 54 NY2d 1008, 1010,
 
 supra).
 

 IV
 

 In Lindsey, plaintiffs’ cross motion to amend by adding a fraud cause of action was properly denied. The motion was made more than two years after plaintiffs obtained evidence which in the exercise of reasonable diligence should have apprised them of the claimed fraud (CPLR 203, subd [f]; 213, subd 8). It was also made more than six years after the claimed fraud (CPLR 213, subd 8) and, because the original complaint did not sufficiently state circumstances constituting fraud (CPLR 3016, subd [b]) to give adequate notice of the claimed fraudulent transaction, is not saved by the relation back provision of CPLR 203 (subd [e]) (cf.
 
 Caffaro v Trayna,
 
 35 NY2d 245, 251,
 
 supra).
 

 For the foregoing reasons, the order of the Appellate Division in Martin v Edwards Labs, should be reversed, with costs, and the order of Supreme Court made on reargument reinstated, and in Lindsey v Robins Co., the order of the Appellate Division should be affirmed, with costs to plaintiffs.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Kaye concur; Judge Simons taking no part.
 

 In
 
 Martin v Edwards Labs.:
 
 Order reversed, with costs, and order of Supreme Court, Erie County, made on reargument reinstated.
 

 In
 
 Lindsey v Robins Co.:
 
 Order affirmed, with costs to plaintiffs. Question certified answered in the affirmative.
 

 *
 

 Murphy v St. Charles Hosp.
 
 (35 AD2d 64, 67) was based in part on that rationale. Accord
 
 Klein v Dow Corning Corp.
 
 (661 F2d 998 [mammary prosthesis]);
 
 Kristeller v Robins Co.
 
 (560 F Supp 831 [Daikon Shield]). Nor does CPLR 214-a proscribe our adoption of a date of injury rule as to a product liability action against the manufacturer of a device to be implanted or inserted in the body, for it does no more than exclude prosthetic devices from the discovery rule it enacts for medical malpractice cases
 
 (Matter of Beary v City of Rye,
 
 44 NY2d 398;
 
 Rockwell v Ortho Pharm. Co.,
 
 510 F Supp 266; see
 
 Thornton v Roosevelt Hosp.,
 
 47 NY2d 780; Mclaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR 214-a, 1982-1983 Pocket Part, p 170). Indeed the Report of the Committee on Medicine and Law of the Association of the Bar of the City of New York, which was before the Legislature when chapter 109 of the Laws of 1975, which enacted CPLR 214-a, was under consideration (NY Legis Ann, 1975, p 225), stated with respect to the discovery provision (at p 29): “The Court of Appeals’ limited exception in
 
 Flanagan,
 
 supra, was its attempt at balancing the need of the physician for repose with that of the patient who can lose a cause of action before he had discovered it. Subsequent decisions can be expected to allow the common law to develop as the courts believe is fair.”