Doreen Davis et al., Appellants, v A. H. Robins Company, Respondent, et al., Defendant.

First Department, March 6, 1984

### APPEARANCES OF COUNSEL

*Louise H. Hayes* of counsel (*Harry H. Lipsig, Pamela Anagnos Liapakis* and *Renaye B. Cuyler* with her on the brief; *Lipsig, Sullivan & Liapakis, P. C.,* attorneys), for appellants.

*Herman Schmertz* of counsel (*Gair, Gair & Conason, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J. P.

The Dalkon Shield is an intrauterine birth control device manufactured by the defendant, A. H. Robins Company, Inc. (Robins). "Between June 12, 1970, and June 28, 1974, approximately 2.2 million Dalkon Shields were inserted in women in the United States" (*Matter of Northern Dist. of Cal., "Dalkon Shield" IUD Prods. Liability Litigation,* 526 F Supp 887, 892-893).[*]

---

[*] A. H. Robins Company, Inc., on or about June 28, 1974, discontinued distribution of the Dalkon Shield. (*Matter of Northern Dist. of Cal., "Dalkon Shield" IUD Prods. Liability Litigation,* 526 F Supp 887, 893.)

In the Federal courts, "[b]y May 31, 1981, approximately 3,258 actions relating to the Dalkon Shield had been filed, and 1,573 claims were pending" (*Matter of Northern Dist. of Cal., Dalkon Shield IUD Prods. Liability Litigation,* 693 F2d 847, 849). In discussing this device, it was stated: "During the years in which the Dalkon Shield has been utilized, a number of women have had adverse reactions to the device * * *

"[Some of these reactions have allegedly been] perforation of the uterus, infections of the reproductive organs, pregnancy, spontaneous abortion, fetal injuries, cancer of the uterus [and] maternal blindness" (*Matter of Robins Co. "Dalkon Shield" IUD Prods. Liability Litigation,* 406 F Supp 540-541 [Judicial Panel on Multidistrict Litigation]).

The plaintiffs, Doreen and Martin Davis, seek to recover damages for personal injury allegedly resulting from the use of the "Dalkon Shield", and commenced this action on April 29, 1980, with the service of a summons and complaint. Doreen Davis alleged that the "Dalkon Shield" was inserted into her body on May 21, 1971. Further, she alleges that she had periodic gynecological examinations, which indicated everything was normal. In 1973 and in 1975, she was hospitalized for a hernia operation and an appendectomy, respectively, and during this period of time the intrauterine device remained *in situ* and presented no problems for her. The complaint further alleges that Doreen Davis' first complaints relative to the intrauterine device (IUD) began on or about November, 1978.

In November, 1978, Doreen Davis visited the individual defendant, Dr. Stanley Pianin (Pianin), on three occasions, and she complained of pain in her lower abdomen and lower back. Pianin treated her for a urinary tract infection. In view of the fact that her discomfort continued, Doreen Davis went to Montefiore Hospital Medical Center (Montefiore), which admitted her as a patient on November 25, 1978. Examination of Montefiore Hospital's records reveals that on November 26, 1978 she was diagnosed as having a tubo-ovarian abscess, believed to have been caused by the "Dalkon Shield", which, since May, 1971,

had remained *in situ*. Thereafter, on December 11, 1978, in St. Vincent's Hospital and Medical Center of New York, she was operated on and the surgeon excised a left tubo-ovarian abscess by, among other things, removing Doreen Davis' left tube.

After serving its answer to the amended complaint, defendant Robins moved, pursuant to CPLR 3211 (subd [a], par 5), to dismiss on the ground that the complaint was barred by the Statute of Limitations. The defendant Robins' theory, as expressed in its moving papers, is that the plaintiffs' causes of action accrued on May 21, 1971, when the Dalkon Shield was implanted in Doreen Davis' body, which was approximately nine years before this action was commenced. Concededly, a three-year Statute of Limitations (CPLR 214, subd 5) applies to the plaintiffs' negligence and strict products liability claims; and, a four-year Statute of Limitations (Uniform Commercial Code, § 2-725, subd [1]) applies to the plaintiffs' breach of warranty claims. In response to this contention of defendant Robins, the plaintiffs argue that their complaint is timely because the causes of action did not accrue until November, 1978, when the abscess was discovered.

Special Term, in a memorandum decision, dated January 6, 1983, granted defendant Robins' motion on the authority of the Court of Appeals decisions in *Thornton v Roosevelt Hosp.* (47 NY2d 780) and *Matter of Steinhardt v Johns-Manville Corp.* (54 NY2d 1008).

Some months later, on December 1, 1983, the Court of Appeals announced its decision in *Lindsey v Robins Co.* (60 NY2d 417). *Lindsey,* like the instant case, involved the issue of when the Statute of Limitations begins to run in respect to the development of a pelvic infection after the insertion of a Dalkon Shield. Unanimously, the Court of Appeals held that (p 422): "The Statute of Limitations for personal injury caused by the malfunctioning of a * * * contraceptive device implanted or inserted into the human body runs from the date of injury resulting from the malfunction, not necessarily from the date of implantation or insertion."

Furthermore, in its opinion, the Court of Appeals distinguished the authority relied upon by Special Term. Thus, the court wrote:

"Defendants argue that the action [related to the pelvic infection and the implantation of the shield into Joyce Lindsey] accrued on implantation or insertion of the device, as in cases where a harmful substance is injected, ingested or inhaled into the body (*Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008, app dsmd and cert den 456 US 967 [inhalation of asbestos] * * * *Thornton v Roosevelt Hosp.,* 47 NY2d 780 [injection of carcinogenic chemical compound] * * *

"In the [*Lindsey* case] we deal with [a product] intended to be implanted or inserted in, but not to be assimilated by, the human body and there to remain, until removed for repair or other reason, in order to perform a continuing function * * * [T]o protect the manufacturer by a date of insertion or implantation rule is both unrealistic and unnecessary. In the inhaled, ingested or injected substance cases in which such a rule does apply, the forces of harm are inexorably set in motion when the substance enters and is assimilated into the body. An implanted or inserted device intended to perform a continuing function, to the contrary, causes no injury until the product malfunctions * * *

"We conclude, therefore, that the proper rule to be applied with respect to products implanted or inserted in the human body is neither time of implantation or insertion nor time of discovery, but * * * [the] date of injury rule, which will most often be the date when the product malfunctions. Thus * * * in *Lindsey,* the unintended introduction of infectious bacteria into the uterus." (*Lindsey v Robins Co., supra,* pp 424-428.)

Accordingly, insofar as the date of the injury is concerned, the *Lindsey* case is controlling, and the date from which the Statute of Limitations ran is when the infection occurred.

However, defendant raises issues that seek to distinguish this case from *Lindsey* (*supra*). Defendant Robins argues that the decision in *Lindsey* is inapplicable herein since in that case the plaintiff, as well as a physician, submitted evidentiary affidavits that established an injury allegedly causally related to defendant's Dalkon Shield, which injury allegedly occurred within three years before the action was instituted; while, in the instant case, there

is neither an affidavit from the plaintiff or a physician establishing the date of alleged injury from the Dalkon Shield. We find no merit in defendant's contention.

Our review of the record reveals that this plaintiff submitted copies of hospital records, which were kept in the regular course of business (CPLR 4518, subd [a]), as her evidence of the date of the development of the abscess resulting from the Dalkon Shield, which date of November, 1978 was within three years of the commencement of this action. These hospital records were discussed and described, *supra*.

Defendant Robins argues that *Weinreich v Robins Co.* (96 AD2d 860) decided after *Lindsey* (*supra*) requires that defendants' motion for summary judgment be granted, and quotes from *Weinreich* (*supra*): "Although the standard of proof required of the party opposing summary judgment is more flexible than the standard applicable to the movant, the opponent is nevertheless required to tender evidentiary proof in admissible form reflecting such opposition or alternatively is required to demonstrate an acceptable excuse for failure to do so * * * In the case at bar, plaintiffs failed to do either. The date of injury concededly was not alleged in the complaint, and the only allegation regarding the onset of injury was contained in the affirmation of plaintiffs' attorney, filed in opposition to the motion for summary judgment, which stated that plaintiffs intended to prove at trial that the injury occurred in March, 1980. This affirmation was not based on personal knowledge and did not constitute evidentiary proof in admissible form, and it was therefore to be disregarded".

We hold that *Weinreich* (*supra*) is clearly distinguishable as the only evidence offered was an attorney's affirmation. Here, the hospital records were made a part of the motion papers.

The hospital records of Montefiore Hospital Medical Center and St. Vincent's Hospital contain doctors' entries that directly relate plaintiff's infection to the presence of the Dalkon Shield IUD. (Patient progress observation record, Nov. 26, 1978 [Record on Appeal, at pp 116-118].) On page 116, line 9, the IUD is identified as a Dalkon Shield,

and on line 20 of page 118 appears the opinion that the pelvic infection was "caused by IUD".

The law in this State is well settled that hospital records are admissible. CPLR 4518, the business records rule, sets forth that records and writings are not only admissible but are prima facie evidence of the facts contained therein.

Entries which are made in the hospital chart, and are relative to the treatment or diagnosis of the patient, qualify for admission under the statutory business rule (*Williams v Alexander,* 309 NY 283). These same hospital records contain observations and give the medical opinions of the physicians who treated the patient at the two hospitals. In *Weinreich* (*supra*), the plaintiffs offered no evidence other than the affirmation of the attorney, who obviously had no personal knowledge of the medical facts. Clearly, here, evidence has been submitted which distinguishes this case, in that the statements of doctors, who are disinterested persons, have served as the basis for the plaintiff's presentation on this motion.

It appears to this writer that the opinions of the physicians which appear in the hospital record, are apparently unbiased, since these opinions, with reference to the date of the injury, and the cause of the injury, were rendered a number of months prior to the commencement of this lawsuit. Certainly, the hospital record, made, as here, without contemplation of litigation, is at the minimum, as probative as a doctor's affidavit given for the sole purpose of being used in a lawsuit, particularly where the doctor is being compensated for presenting his opinion at the request of a litigant, and which doctor may never have seen the subject party.

We decline to hold that these hospital records are insufficient to defeat a motion for summary judgment. These entries were made at the time of the treatment of Doreen Davis by medical personnel, including physicians, in the regular course of their duties, and without any consideration of future litigation. Any finding that such entries have less probative value than a doctor's affidavit would be illogical, if not ludicrous.

The defendant further argues that the burden is on the plaintiff to prove that the injury did not occur earlier than

November, 1978. The same argument was presented in *Lindsey* (60 NY2d, at p 428) and the court therein said: "The argument overlooks the fact that it is *defendant's* obligation to prove that the injury occurred more than three years prior to the commencement of the action (CPLR 3018, subd [b] [other citations omitted])." (Emphasis supplied.) In *Lindsey,* the court concluded that the affidavit by plaintiff's physician was sufficient to establish that injury occurred within three years before suit was commenced and, accordingly, plaintiff had submitted sufficient proof to defeat defendant's motion for summary judgment. Similarly, in this matter, the hospital records indicate that the injury to the plaintiff took place sometime in November, 1978 and, accordingly, is sufficient to defeat defendant's motion to dismiss the complaint based upon the Statute of Limitations. In *Lindsey,* it could not be said as a matter of law that the infection began more than three years prior to the commencement of the lawsuit. Similarly, in this case, it cannot be said as a matter of law that the infection process began earlier than November, 1978.

We find an issue of fact has been sufficiently raised which requires a trial of this action.

Accordingly, the order, Supreme Court, Bronx County (IRWIN M. SILBOWITZ, J.), entered January 20, 1983, which granted the motion for summary judgment of defendant A. H. Robins Company, Inc., should be reversed, on the law, with costs, and the defendant's motion denied.

ASCH, FEIN, MILONAS and ALEXANDER, JJ., concur.

Order, Supreme Court, Bronx County, entered on January 20, 1983, unanimously reversed, on the law, and the defendant's motion is denied. Appellants shall recover of respondent $75 costs and disbursements of this appeal.