*890 OPINION OF THE COURT
Memorandum.
The order of the Appellate Division in each case should be affirmed, with costs.
There is no showing in the record in either case of sufficient legal significance to warrant departure from our prior decisions. (Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008, remittitur amd 55 NY2d 802, app dsmd cert den 456 US 967; Thornton v Roosevelt Hosp., 47 NY2d 780; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, remittitur amd 12 NY2d 1073, cert den 374 US 808; Schmidt v Merchants Desp. Transp. Co., 270 NY 287, rearg den 271 NY 531.) We most recently reaffirmed our adherence to these decisions in Martin v Edwards Labs. (60 NY2d 417, 425-426). Any departure from the policies underlying these well-established precedents is a matter for the Legislature and not the courts.
Chief Judge Cooke (dissenting). Admittedly, the injuries in this case are essentially no different than the injuries suffered because of the delayed or slow action of inhaled asbestos (Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008, app dsmd 456 US 967; Schmidt v Merchants Desp. Transp. Co., 270 NY 287), or cancer-causing drug injections (Thornton v Roosevelt Hosp., 47 NY2d 780; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, cert den 374 US 808). But, because I believe that the reliance on past precedent is no longer justified, I respectfully dissent.
It appears that the primary proffered rationale for continuing the rule that the causes of action accrue in the present cases upon contact with the cancer-causing agent is the doctrine of stare decisis. If this were a completely inflexible rule, I would acquiesce in the continuance of the result first enunciated in 1936 in Schmidt v Merchants Desp. Transp. Co. (supra). However, the law is not and should not be so inflexible that it cannot correct itself from injustice and unfounded concerns espoused in prior decisions (see Woods v Lancet, 303 NY 349, 354-355). True, precedent is not to be abandoned lightly or without compelling circumstances, for it serves an important purpose of maintaining stability in the law (see Cenven, Inc. v Bethle *891 hem Steel Corp., 41 NY2d 842, 843; Heyert v Orange & Rockland Utilities, 17 NY2d 352, 360; Sprecher, 31 ABAJ 501) and “it would be foolhardy not to recognize that there is potential for jurisprudential scandal in a court which decides one way one day and another way the next” (People v Hobson, 39 NY2d 479, 488). On the other hand, the doctrine should not be used as a shield behind which a court may hide as reason for perpetuating unnecessary and profound unfairness, which subjects the law to ridicule. “Tort cases, but especially personal injury cases, offer another example where courts will, if necessary, more readily re-examine established precedent to achieve the ends of justice in a more modern context (see, e.g., Victorson v Bock Laundry Mach. Co., 37 NY2d 395; Goldberg v Kollsman Instrument Corp., 12 NY2d 432; Bing v Thunig, 2 NY2d 656; Woods v Lancet, 303 NY 349). Significantly, in these cases the line of precedent, although well established, was found to be analytically unacceptable, and, more important, out of step with the times and the reasonable expectations of members of society.” (People v Hobson, 39 NY2d 479, 489, supra.)
A grave injustice — to victims of DES as well as to past and future victims of identified and unidentified substances which do not immediately make known their harmful effect upon the body but have a “time-bomb” effect — is worked by the current rule of law which requires negligence and products liability causes of action to be brought before a plaintiff could reasonably know of their existence and very likely before any medically cognizable injury has occurred. It is time to abandon that inequitable rule as a mistake of the past that we have a duty to correct (see Woods v Lancet, 303 NY 349, 354-355, supra). The current rule is unreasonable and the Statute of Limitations should not be construed in such a manner (see Urie v Thompson, 337 US 163, 168-171; Thornton v Roosevelt Hosp., 47 NY2d 780, 783-785, supra [Fuchsberg, J., dissenting]; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 219-220, supra [Desmond, Ch. J., dissenting]; Heath v Sears, Roebuck & Co., 123 NH 512, 524).
It is not persuasive to say that any change is better left to the Legislature. That the determination of when a cause *892 of action accrues is not solely a matter for the Legislature, is plainly evident by this court’s determination here and previously, that a cause of action of this type accrues upon injury which is assumed to occur at the time of exposure, ingestion or injection of the cancer-causing foreign substance (see, e.g., Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, supra; Schmidt v Merchants Desp. Transp. Co., 270 NY 287, supra). Indeed, when this court acted to change the common law by adopting a date-of-discovery rule for the commencement of foreign-object medical malpractice cases, it stated: “Our decision does not encroach upon any legislative prerogatives. The Legislature did not provide that the Statute of Limitations should run from the time of the medical malpractice. This court did. Therefore, a determination that the time of accrual is the time of discovery is no more judicial legislation than was the original determination. Granted, the Legislature could have acted to change our rule; however, we would surrender our own function if we were to refuse to deliberate upon unsatisfactory court-made rules simply because a period of time has elapsed and the Legislature has not seen fit to act.” (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 434; see Woods v Lancet, 303 NY 349, 354-356, supra).
As recently stated by this court: “When limitations begin to run ‘depends on a nice balancing of policy considerations’ (Victorson v Bock Laundry Mach. Co., 37 NY2d, supra, at p 403) reflecting the manufacturer’s interest in defending a claim before his ability to do so has deteriorated through passage of time, on the one hand, and, on the other, the injured person’s interest in not being deprived of his claim before he has had a reasonable chance to assert it (id.; Caffaro v Trayna, 35 NY2d 245, 250-252; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 429-431).” (Martin v Edwards Labs., 60 NY2d 417, 425.) Here, the balance of policy considerations weighs heavily in favor of plaintiffs and indicates that a discovery rule or, at the very least, a true date of medical-injury rule should be adopted for the accrual of the causes of action.
A Statute of Limitations serves in part to prevent plaintiffs from sleeping on their rights or waiting to assert stale claims and to ensure that defendants will receive notice of *893 claims as soon as practicable (see Urie v Thompson, 337 US 163, 170, supra). In these cases, the plaintiffs cannot be said to have purposefully or unreasonably waited to bring suit because no injuries were known by them to occur at the time of their ingestion of or exposure to DES (see Raymond v Lilly & Co., 117 NH 164, 170).
As to the deterioration of the ability to defend, this situation is functionally equivalent to defective products that are implanted without assimilation. In the latter situation, “the age of the claim and consequent problems of proof disadvantaged not only the manufacturer but also the plaintiff who to succeed had to prove that the defect existed at the time it left the manufacturer’s plant” (Martin v Edwards Labs., 60 NY2d 417, 427, supra). Indeed, in DES cases, because of the long passage of time until a suit is brought, the plaintiff will be severely disadvantaged in trying to determine which drug company manufactured the product, and the availability of other theories of recovery has not yet been expressly determined (see Bichler v Lilly & Co., 55 NY2d 571). Further, the fact that the product has assimilated into the body does not debilitate the defense, because the nature of the claim is not that the product “broke” but that its known and undisputed chemical composition at the time of ingestion was defective. Thus, examination of the actual product here, unlike a defective implanted product, is not crucial to the defense. Finally, prior DES cases have shown that much of the original testing information has been preserved by the chemical manufacturers (see Bichler v Lilly & Co., 55 NY2d 571, supra).
Neither does credibility, nor the danger of feigned claims play a significant or greater role in DES cases than implant cases because it is quite impossible to feign the medically certifiable presence of cancer. In addition, similar to the implant cases, the fact that “complicated medical questions may be involved and professional diagnostic judgment implicated” (Martin v Edwards Labs., 60 NY2d, at p 427) does not require a date-of-ingestion rule, just as such considerations did not require a date-of-insertion rule in the implant cases, because the medical issues “normally will concern only recent events rather than the remote implantation” (id.).
*894 The function of the Statute of Limitations as a “device for repose,” relied upon initially in Schwartz v Heyden Newport Chem. Corp. (12 NY2d 212, 218, supra), should not now be deemed to outweigh the plaintiff’s equities. In Schwartz, the balance in favor of repose rested upon the presumptions that only “the interests of an occasional claimant were subordinate to society’s interest in repose”; and that only in fraud actions “were there a sufficient number of unknown wrongs to justify a departure from the general rule” as compared to “the rarity of such unfortunate cases in other types of actions” (id. [emphasis added]). It is now all too clear that long-delayed injuries resulting from ingestion of toxic drugs are no longer a “rarity.”
These cases present a compelling argument for adopting a discovery rule. The plaintiff may not know of the exposure to DES or other potentially harmful pharmaceuticals, which presents a situation similar to the foreign-object medical malpractice cases where a discovery rule is utilized (see CPLR 214-a), or that such exposure may be harmful. With an implanted device, it is far more likely that the plaintiff will discover injury caused by a product failure within the Statute of Limitations, but with ingested medications, the plaintiff will often not learn of or suspect any injury until the cancer begins to manifest itself, which may be years after the present limitation period or even after the cancer cells began to form. This is especially true, when the drug was a teratogen and the plaintiff was in útero.
In sum, given the relatively equal deterioration in the ability to defend and prosecute, these types of “time-bomb” drug cases, and the strong societal interest in not depriving an injured person of his or her claim before it can reasonably be asserted, a discovery rule should be adopted in these cases. At the very least, adherence to the medical-date-of-injury rule, recently adopted in Martin v Edwards Labs. (60 NY2d 417, supra), should be continued in these types of cases. In Martin, the “delayed” injuries were suffered from a defective intrauterine device, where the product itself did not malfunction but permitted bacteria to invade the uterus from the date of its insertion. This court held that plaintiff’s time to sue did not begin to run until a *895 pelvic infection began. No rational distinction can be drawn between that case and the present, where no medically cognizable injury may occur until sometime after the prescribed medication was taken.
For all these reasons, the order of the Appellate Division should be reversed, and plaintiffs’ complaints reinstated.
Judges Jasen, Jones, Wachtler and Simons concur; Chief Judge Cooke dissents and votes to reverse in an opinion; Judges Meyer and Kaye taking no part.
In each case: Order affirmed, with costs, in a memorandum.