John **WARD** and Patricia Ward, Plaintiffs-Appellants,

v.

The **DESACHEM COMPANY** and Lyndal Chemical, Inc., Defendants-Appellees.

The **DESACHEM COMPANY**, Third-Party Plaintiff-Appellee,

v.

**DAIRYLEA COOPERATIVE, INC.,** Third-Party Defendant-Appellee.

No. 1325, Docket 85–7226.

United States Court of Appeals, Second Circuit.

Argued June 12, 1985.

Decided Aug. 28, 1985.

Patrick J. Fogarty, Mineola, N.Y. (Fogarty & Fogarty, P.C., Mineola, N.Y., Scott Fairgrieve, Mineola, N.Y., of counsel), for plaintiffs-appellants.

Michael A. Calandra, New York City (Dwyer, Peltz & Walker, New York City, of counsel), for defendant-appellee Lyndal Chemical.

Richard B. Marrin, New York City (Ford Marrin Esposito & Witmeyer, New York City, of counsel), for defendant-appellee The Desachem Company.

Alexander, Ash, Schwartz & Cohen, P.C., New York City, for third-party defendant-appellee Dairylea Cooperative, Inc.

Before LUMBARD, OAKES, and WINTER, Circuit Judges.

LUMBARD, Circuit Judge:

John and Patricia Ward, plaintiffs-appellants in this employment-related personal injury action, appeal from a February 21, 1985 decision and order of the Eastern District of New York, Mark A. Costantino, J. The challenged decision and order granted summary judgment in favor of defendants-appellees The Desachem Company ("Desachem") and Lyndal Chemical, Inc. ("Lyndal") on the ground that New York's three-year statute of limitations for personal injury suits bars the Wards' action.[1]  The

---

1.  The parties agree that New York law applies to this diversity action.  John and Patricia Ward

district court based its findings upon a variety of supporting materials, including attorneys' affidavits, answers to interrogatories, physicians' reports, and—in particular—upon excerpts from the deposition of plaintiff John Ward. Although the facts in these documents are taken as undisputed for purposes of this appeal, we find that they are nevertheless insufficient to support a determination that the Wards' action is time-barred; accordingly, we reverse the grant of summary judgment and remand for further proceedings.

The facts alleged by the Wards, and taken as undisputed, are as follows. In January, 1974, John Ward commenced working as a night utility man and subsequently as a day-off relief man in the Woodside, New York, plant of Dairylea, Cooperative, Inc. ("Dairylea"). In January, 1978, Ward became a member of Dairylea's clean-up crew; he held this position until 1983. While associated with the clean-up crew, Ward worked 40 to 70 hours per week cleaning machines and equipment with chlorine, caustic soda, and other chemicals; these chemicals were supplied by Desachem and Lyndal. On January 18, 1978, shortly after Ward began to work with the clean-up crew, he visited Dr. Martin Tuchman and complained of irritability, fatigue, and sensations in his chest. According to Ward's deposition, Ward suspected at the time that these symptoms were related to his exposure to the chemical fumes and he had, in fact, earlier lodged a complaint to that effect with his supervisor. Nevertheless, after examining Ward Dr. Tuchman concluded that the patient was physically sound, but was suffering from the depression and fatigue often associated with overwork.

Bolstered by Dr. Tuchman's essentially positive prognosis (and, incidentally, by his own strong performances in the 1978 and 1979 New York City Marathons), Ward continued to work on the Dairylea clean-up crew and consequently underwent continuous exposure to the toxic chemical fumes.

In January, 1980, while using chlorine to clean a milk tank, Ward began to experience shortness of breath, dizziness, and other symptoms. Ward was concerned by this incident and by his continuing intermittent shortness of breath; consequently, in February and March of that year he received extensive physical examinations from a second physician, Dr. Erwin Cohen. Dr. Cohen concluded, as had Dr. Tuchman, that Ward was in good health; he warned, however, that Ward's continued exposure to chemical fumes in the workplace might result in "respiratory sensitivity ... [and lead] to permanent damage."

Finally, on October 27, 1980, Ward passed out while cleaning an unvented sugar tank with chlorine and caustic, and had to be pulled from the tank by a co-worker. Ward immediately visited a third physician, Dr. Melvin Holden, and apprised him of the symptoms he had had since the January milk tank incident. On December 10, 1980, following comprehensive examinations, Dr. Holden diagnosed Ward's breathing difficulties as "asthma produced by exposure to noxious fumes." He recommended that Ward "scrupulously avoid" such fumes from then on.

Despite Dr. Holden's diagnosis, Ward continued to work on the Dairylea clean-up crew. He eventually saw a fourth physician, Dr. John J. Rooney, who (in a letter to Dairylea dated February, 1982) reported that Ward was suffering from chronic asthmatic bronchitis, or intrinsic asthma. Dr. Rooney concluded that Ward could not tolerate continued exposure to chemicals. Ward finally terminated his association with the Dairylea clean-up crew in June, 1983.

The Wards filed this action against Desachem on July 28, 1981, and an amended summons and complaint against Lyndal on January 7, 1982, alleging that the two companies had manufactured, sold, supplied, and delivered the chemicals that had pro-

are New York domiciliaries. Desachem and Lyndal are New Jersey citizens. The plant that was the site of Ward's injuries is located in Woodside, New York.

duced the harmful toxic fumes.[2] The Wards sought damages based on theories of negligence, breach of express and implied warranties, failure to warn, and strict tort liability. Desachem and Lyndal moved for summary judgment, alleging that the claims were time-barred pursuant to New York's three-year statute of limitations for personal injuries. *See* N.Y.Civ.Prac.Law § 214(5) (McKinney 1984).

The district court granted the defendants' motion for summary judgment, noting that under New York law the statute of limitations "begins to run from the time when liability for the wrong has arisen," citing *Schmidt v. Merchants Despatch Trans. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936). The district court found that the defendants' alleged liability to the Wards would have accrued around the time Ward consulted Dr. Tuchman in January, 1978; the court stated that at that point Ward had been "exposed [to the chemicals and had] apparently discovered his injury...."[3] The court concluded that because the Wards did not institute their action against Desachem until mid-1981, the three-year limitation period had elapsed.

The district court went on to reject the plaintiffs' attempt to invoke the case of *Steinhardt v. Johns-Manville Corp.*, 54 N.Y.2d 1008, 446 N.Y.S.2d 244, 430 N.E.2d 1297 (1981), *cert. denied*, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982), as support for the proposition that in cases involving assimilation of harmful products or substances into the body—as distinguished from one-time insertion or implantation—the New York Statute of Limitations runs from the last date of exposure to the product or substance. *See also Wright v. Carter Prods.*, 244 F.2d 53 (2d Cir.1957) (applying "last date of exposure rule" on theory that plaintiff's *last* exposure to the harmful product, which occurred within the New York Statute of Limitations period, may have caused her entire injury); *accord Lindsay v. Ortho Pharmaceutical Corp.*, 481 F.Supp. 314, 341–43 (E.D.N.Y.1979), *rev'd on other grounds*, 637 F.2d 87 (2d Cir.1980). The district court stated that, assuming *Steinhardt* stands for this principle, it applies only when the "time-bomb" effect of an assimilated substance makes it *impossible* to discover the harm during the three-year limitation period. Citing the deposition testimony of John Ward, the court stated that Ward knew of his illness and its cause when he visited Dr. Tuchman in 1978 and, consequently, that it would be inappropriate to apply the *Steinhardt* "last date of exposure rule" to the Wards' claim.

The central issue on appeal, therefore, is whether the district court erred in holding that the "date of last exposure rule" recently reaffirmed in *Steinhardt* and other New York cases does not apply to an inhalation action in which the plaintiff's injury and its probable cause was discoverable—and, indeed, may have been discovered—more than three years prior to the filing of his lawsuit. Because we believe that the New York courts did not intend to create a "discoverability" exception to the date of last exposure rule, we hold that the Wards' action is timely filed *regardless* of when John Ward knew that he was being harmed by defendants' toxic chemical fumes. Accordingly, we reverse the judgment of the district court.

The New York Court of Appeals has stated repeatedly that the New York Statute of Limitations for inhalation, ingestion, or injection of harmful substances begins to run "from the last exposure to the substance, *not from discovery* of the injury." *Martin v. Edwards Laboratories*, 60 N.Y.2d 417, 426, 469 N.Y.S.2d 923, 927, 457 N.E.2d 1150, 1154 (1983) (emphasis added);

---

**2.** Desachem subsequently brought a third-party action against defendant Dairylea, who was Ward's employer throughout his exposure to the chemicals.

**3.** The district court based its finding on one critical passage in the Ward deposition:

Q. Do you remember if your complaints to Dr. Tuckman [sic] at that time, were related to the exposure you had at the clean-up crew?
A. Yes, yes; that was about the time I was feeling that way and depressed; yes.

*see also Steinhardt, supra,* 54 N.Y.2d at 1010, 446 N.Y.S.2d at 246, 430 N.E.2d at 1299 (observing that the last exposure rule renders irrelevant the date on which injury "was or could have been discovered"). Until such time as the Court of Appeals is prepared to reconsider this beleaguered strict "date of injury" rule for accrual of the cause of action, it must be applied flatly and without regard to whether or when the plaintiff discovered his injury. *See, e.g., Thornton v. Roosevelt Hospital,* 47 N.Y.2d 780, 784, 417 N.Y.S.2d 920, 923, 391 N.E.2d 1002, 1004–05 (1979) (Fuchsberg, J., dissenting) (calling for reexamination of the rule); Note, *Toward a Time-of-Discovery Rule for the Statute of Limitations in Latent Injury Cases in New York State,* 13 Fordham Urban L.J. 113, 137–46 (1985) (urging adoption of a "discovery-of-injury" rule). Thus, we see no reason to assume that the Court of Appeals' interpretation of the New York statute would vary when the last exposure occurs *after* —rather than before—discovery of the harm. *Cf. Lindsay, supra,* 481 F.Supp. at 340–41 (applying rule although plaintiff's symptoms first appeared prior to last exposure to the harmful product); *Sterling Drug, Inc. v. Cornish,* 370 F.2d 82 (8th Cir.1966) (same). Indeed, policy considerations clearly support application of the date of last exposure rule to actions—such as the Wards'—in which it is difficult to determine the point at which the harm was "discoverable" and the injury manifest; such issues are better resolved by a jury after trial than by the court on summary disposition.

Applying the New York law, therefore, we hold that the Wards have timely sued for any chemical-related work injuries that John Ward may have suffered in the three years prior to their commencement of this action. In addition, Ward may recover for any cumulative effect on such injuries that may have resulted from inhalations occurring prior to the three-year period. *See Aranoff v. Winthrop Laboratories,* 102 A.D.2d 736, 476 N.Y.S.2d 571, 572 (1st Dep't 1984). On the other hand, a jury could properly consider Ward's alleged negligent self-exposure to the toxic fumes as a factor in apportioning comparative culpability. *See* N.Y.Civ.Prac.Law § 1411 (McKinney 1984); *Billiar v. Minnesota Mining & Mfg. Co.,* 623 F.2d 240, 244 (2d Cir.1980) (discussing comparative culpability in products liability action); *Micallef v. Miehle Co.,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976) (noting employee's duty of reasonable care in work-related injury case); *Curry v. Moser,* 89 A.D.2d 1, 454 N.Y.S.2d 311 (2d Dep't 1982) (discussing comparative negligence in New York). In this regard, the matter of when Ward discovered his injury, as relevant to the determination of damages, is an issue for the jury to determine.

Reversed and remanded for further proceedings.