(March 19, 1991)

■ EMMA FREEDMAN, Respondent, v MEDTRONIC, INC., Appellant.—Order, Supreme Court, New York County (William J. Davis, J.), entered May 18, 1990, which, upon reargument and renewal, modified an order of said court, entered February 23, 1990, to grant defendant's motion for summary judgment to the extent of dismissing plaintiff's cause of action for breach of warranty and otherwise deny such motion, affirmed, without costs. Appeal from the February 23, 1990 order of said court is dismissed as superseded by the appeal from the May 18, 1990 order, without costs.

Plaintiff commenced this personal injury action on December 23, 1987 against defendant Medtronic, Inc. ("Medtronic"), the manufacturer of a heart pacemaker device. The complaint

alleges causes of action in breach of warranty, products liability and negligence. Defendant moved, pursuant to CPLR 3212, to dismiss the action as time-barred because the implant occurred more than four years prior to commencement of the action and the alleged malfunctioning, with resulting injury to plaintiff, occurred more than three years prior to commencement of the action. (UCC 2-725; CPLR 214; *Martin v Edwards Labs.*, 60 NY2d 417, 427-428 [1983].) The IAS court initially dismissed all three causes of action but upon renewal and reconsideration, dismissed only the cause for breach of warranty. (UCC 2-725.) As to the causes for negligence and products liability, the IAS court concluded that the affidavit of plaintiff's medical expert, based upon his analysis of plaintiff's medical records, was sufficient to raise a material triable issue of fact as to when these causes of action accrued.

We affirm. The affidavit of plaintiff's medical expert, submitted upon renewal, raised a genuine issue of fact as to the date of the injury-producing malfunction and was sufficient to preclude summary judgment. *(Martin v Edwards Labs., supra.)*

On October 29, 1983, a Medtronic pacemaker system was surgically implanted into the then 49 year old plaintiff Emma Freedman ("Freedman"). The system included a programmable power pack (model 8420 pulse generator) and pacemaker catheter or lead wire (model 4002) running from the pulse generator to the heart. On March 14, 1984 plaintiff underwent surgery in an attempt to correct a sensing malfunction in the device. Sensing refers to the ability of the pacemaker system to determine if the heart is beating sufficiently on its own before sending an unnecessary electrical impulse to the heart to stimulate its beating. If the pacemaker does not sense properly, it will send electrical impulses to the heart and cause palpitations. Since the lead wire which caused the occasional non-sensing could not be removed or repositioned, it was medically determined that it would be better to leave plaintiff with a non-functioning lead wire.

Plaintiff was again hospitalized, in September 1986, during which time the pulse generator power pack was replaced. The hospital records for September 25, 1986 indicate that after surgery, the unit was "pacing well" and "[g]ood capture" was achieved. Capture relates to the pacemaker's ability to cause the heart to react to electrical stimulation. It refers to the *heart reacting* to the electrical signal emitted by the pacemaker.

Plaintiff was again admitted to the hospital on May 25,

1987, having suffered an acute myocardial infarction, and was again hospitalized, on December 22, 1987, for complete replacement of both the power pack and defective lead wire.

On the motion for summary judgment defendant submitted portions of plaintiff's deposition testimony and medical records, and the affidavit of a medical expert in support of its position that the malfunctioning of the lead wire, which caused a sensing problem, occurred as early as November 1, 1983, as evidenced by an electrocardiogram taken of plaintiff at that time. Defendant's cardiologist affirmed that the lead caused injury to plaintiff as early as March 14, 1984 when she underwent a two hour operation in an attempt to correct the improper sensing problem. The cardiologist opined that the myocardial infarction suffered by plaintiff in 1987 bore no relationship whatsoever to the pacemaker system.

On this appeal plaintiff does not challenge the IAS court's dismissal of the breach of warranty cause. Plaintiff also agrees that under the rule enunciated in *Martin v Edwards Labs.* (60 NY2d 417, *supra)* and *Lindsey v Robins Co.* (60 NY2d 417), the three year statute of limitations with respect to the remaining causes begins to run with the injury-causing malfunction of the product.

She contends, however, that the date of the injury-causing malfunction occurred in or about May or September of 1986 when the pacemaker first failed to adequately "capture" and not in 1984 when the pacemaker failed to adequately "sense." According to plaintiff, it was at this time that it was discovered that the failure of the pacemaker to properly sense was the result of an insulated defect of the lead wire and it was further discovered that the pacemaker could no longer be reprogrammed to a higher output to avoid failure of capture. Thereafter, according to plaintiff, on May 25, 1987, she suffered an acute myocardial infarction resulting from the pacemaker's failure to adequately capture. Citing the hospital discharge summary following her 1984 surgery, plaintiff argued that while the "occasional non-sensing" was diagnosed upon her March 1984 hospital admission, it produced no injury to her, since the pacemaker continued to capture adequately. She maintained that while the failure to "sense" caused her occasional discomfort and minor heart palpitations, symptoms which she had experienced even prior to the implant, the failure to capture resulted in heart failure and necessitated immediate replacement of the system.

Plaintiff's contention was supported by Dr. Nathaniel Shafer, a licensed physician with a speciality in cardiology,

who affirmed that based upon his review of plaintiff's medical records, it was his opinion that the failure to "capture" was the injury-causing defect and that this first occurred in May of 1986.

Accordingly, the parties' submissions raised material questions of fact to be resolved upon a trial and the presentation of expert testimony. Concur—Ross, Ellerin and Smith, JJ.

Murphy, P. J., dissents in a memorandum as follows: I would reverse and grant defendant's motion for summary judgment.

Plaintiff seeks damages for injuries resulting from an allegedly defective pacemaker device manufactured by defendant. Two causes of action are pleaded, sounding in negligence and strict products liability. This appeal involves only the timeliness of the action.

A pacemaker device manufactured by defendant was surgically implanted in plaintiff in October, 1983. Shortly after implantation, plaintiff complained of palpitations. In March of 1984, surgeons attempted to correct the malfunction. They determined that the pulse generator was functioning properly, but a catheter leading into the heart, called a ventricular lead, was not properly functioning. The surgeon was unable to remove the lead at that time, and the defective lead was left in place. In 1986, the pulse generator was surgically replaced. In 1987, the defective lead was surgically replaced. It was ultimately determined that insulation degradation on the catheter or lead was the cause of the malfunction.

A pacemaker performs two distinct functions. The "sensing" function describes the capacity of the device to determine whether the heart is beating sufficiently by itself before sending an electrical impulse. The sensing function involves measuring the heart's natural intrinsic electric activity. The "capture" function refers to the emitting by the pacemaker of an electrical impulse to the heart to stimulate the heart muscle.

Through interrogatories, defendant ascertained that plaintiff alleged that the surgical operations were performed to correct a failure of the pacemaker to sense properly. Defendant then amended its answer to assert the statute of limitations as a defense. Plaintiff then amended her interrogatory answer to allege that her injuries were caused by a failure of the pacemaker to "properly sense, ultimately resulting in a failure of the pulse generator to properly and adequately capture."

Defendant then moved for summary judgment on its first

affirmative defense asserting the lapse of the three year statute of limitations. In opposition to the motion, plaintiff submitted an attorney's affirmation annexing an unsworn medical report signed by Dr. Nathaniel Shafer, based solely on a review of the plaintiff's medical records. The Court granted defendant's motion but also granted plaintiff's motion for leave to reargue and renew. On reargument, the Motion Court denied defendant's motion for summary judgment and held that the plaintiff's expert's medical report, now recast verbatim as an affidavit, sufficiently laid a foundation by review of the medical records, to rebut defendant's *prima facie* defense. *(See, Bingham v Godfrey,* 114 AD2d 987.) The Motion Court did not, however, reinstate the third cause of action sounding in warranty.

While facially, the expert affidavit might fairly be considered sufficient to lay a foundation for the expert opinion, based solely on a review of medical records, a close review of the record demonstrates that the expert affidavit is riddled with inconsistencies, quotes inaccurately from the medical records, and is wholly unsupported by the record in its conclusion.

Dr. Shafer asserts in his affidavit that the alleged failure to capture caused plaintiff to suffer a heart attack and be admitted on May 25, 1987. He states: "[t]his was a result of a pace maker's failure to adequately 'capture and not the result of a failure to properly sense.' " The quote cited by Dr. Shafer, "capture and not the result of a failure to properly sense", does not appear anywhere in the medical records of plaintiff contained in this record, and is characterized by defendant as a fabrication. Furthermore, he states earlier in the affidavit: "I am concerned that the [heart attack] may not have been due to a malfunctioning pace maker." Thus, he questions his own conclusion that the heart attack was caused by the pacemaker's alleged failure to capture. There is simply no indication anywhere in the medical records included in this record to support Dr. Shafer's conclusion that there was a failure to capture. Indeed, the entry on plaintiff's cardiogram of May 30, 1987 reads, "Electronically paced rhythm with complete and appropriate capture." Inasmuch as the medical records constitute the sole basis for Dr. Shafer's conclusion that there was a failure to capture, the conclusion lacks any foundation in the record.

Lacking any specific entry of a failure to capture in plaintiff's medical records, Dr. Shafer is vague about when failure to capture first occurred. He states first that it was "well

after" the power pack replacement in September 1986. Then he asserts that there was a failure to capture in May of 1987, despite the EKG entry of May 30, 1987, noting a complete and adequate capture.

Dr. Stanley Schneller, a surgeon who performed one of the operations on plaintiff, submitted an affidavit in which he described the failure to sense with preservation of capture as being characteristic of the effect of insulation degradation on the catheter lead. Another expert for defendant, Dr. Henry Solomon, stated that any injury from the malfunctioning lead would have to relate to a lack of sensing.

Plaintiff's cause of action arose when the pacemaker first malfunctioned causing injury, and the limitations period is measured from that date. *(See, Martin v Edwards Labs.,* 60 NY2d 417; *Fitzpatrick v Robins Co.,* 99 AD2d 478.)* The record establishes that this date can be no later than March of 1984 when surgery was performed to correct what the surgical report described as a failure to sense.

In *Fitzpatrick (supra,* at 479) the Court held that a defendant is entitled to summary judgment if the evidence establishes that "onset of the process traceable to the [medical device], which is claimed to have caused plaintiff's injury, began more than three years before the commencement of the action". On this record, it is clear that the process of plaintiff's injury began when the defective lead failed to sense properly in 1983 or 1984 at the latest. Plaintiff clearly suffered injury when she had to undergo a two hour operation in March of 1984 to correct the failure to sense.

Even if the record did substantiate plaintiff's claim of failure to capture, it is not at all clear that this would be a competent procuring cause of injury to plaintiff, rather than another form of injury flowing from the failure to sense properly that was caused by the insulation degradation on the catheter lead. Clearly under *Fitzpatrick (supra)* any failure to capture would be part of the process traceable to the failure to sense. It thus would be measured for limitations purposes from March 1984 at the latest.

Plaintiff's eleventh hour attempt to avoid the statute of limitations by recasting her claim as resulting from failure to capture, supported only by a disingenuous expert affidavit, should not be permitted. The expert affidavit lacks foundation in the record and cannot withstand scrutiny. Defendant's motion should be granted.