OPINION OF THE COURT
Levine, J.
Under settled New York law, because consortium represents each marital partner’s interest in the continuance of the marital relationship as it existed at the inception of the marriage, a loss of consortium cause of action by the spouse of an injured person "does not lie if the alleged tortious conduct and resultant injuries occurred prior to the marriage” (Anderson v Lilly & Co., 79 NY2d 797, 798). The United States Court of Appeals for the Second Circuit has certified a question to us regarding the application of that principle to a case where a toxic substance was introduced into the injured person’s body before the marriage, but did not bring about the onset of a particular disease until many years after the marital relationship began.
As related in the Second Circuit’s decision (Consorti v *451 Owens-Coming Fiberglas Corp., 45 F3d 48, 49), plaintiff’s decedent, John Consorti, was continuously exposed to asbestos which he inhaled during the course of his employment between 1960 and 1970. He and plaintiff Frances Consorti married in 1976. Mr. Consorti was diagnosed as having plural mesothelioma, an incurable cancer of the lining of the lungs, in 1992. The Consortis commenced suit in the Federal District Court, Southern District of New York, against defendant, the manufacturer of the asbestos. They introduced at the trial, which had been consolidated with several other asbestos exposure cases, essentially uncontested evidence that mesothelioma is caused by the inhalation of asbestos, but that the disease does not develop until 25-30 years after exposure. Defendant conceded that Mr. Consorti did not have mesothelioma when he married. The question certified to us is "whether a cause of action lies for loss of consortium where, prior to the marriage, the plaintiff’s spouse was exposed to, and ingested, a substance that remained in his body and eventually caused illness, but the illness did not occur until after the marriage” (id., at 49). We answer the certified question in the negative.
Plaintiff’s contrary argument is that the injury to her spouse giving rise to her loss of consortium claim was his mesothelioma and that the time when that injury occurred was a factual question, resolved in her favor as happening after the marriage and, therefore, beyond the power of this Court to review. We disagree.
The issue of date of injury in toxic substance exposure cases in the New York courts has most often been presented in the context of the application of the Statute of Limitations. Much the same considerations apply in determining the date of injury for purposes of a loss of consortium claim, and neither party here disputes that the holdings of those cases are the controlling precedents for the disposition of the instant case. Concededly, as noted by the Second Circuit, there is language in our earlier toxic substance exposure decisions which may be read as basing the operative date of injury on " 'when there is some actual deterioration of a plaintiff’s bodily structure’ ” (id., at 50, quoting Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 217, remittitur amended 12 NY2d 1073, cert denied 374 US 808). Nonetheless, the true holdings of these early cases (and the results reached) point to the rejection of a fact-based date of medical injury test. That rejection was made for practical and policy reasons articulated in the developing case law, that is, the need to provide *452 manufacturers, employers and other economic actors who are potential defendants with a degree of certainty or predictability in assessing the risk of liability and to avoid stale claims which often turn on questions of credibility or disputed medical judgments. Therefore, a bright line, readily verifiable rule was adopted in which, as a matter of law, the tortious injury is deemed to have occurred upon the introduction of the toxic substance into the body. Thus, in Schmidt v Merchants Desp. Transp. Co. (270 NY 287, rearg denied 271 NY 531), a case where the claim arose out of plaintiffs inhalation of silicone dust, subsequently resulting in his contracting pneumoconiosis, this Court rejected plaintiffs claim that the injury giving rise to his cause of action occurred "not at the time he inhaled the dust * * * but at the time when the dust, so inhaled, resulted in a disease of the lungs and that date, it is said, can be determined only by medical testimony” (id., at 300 [emphasis supplied]). Instead, the Court in Schmidt held that
”[t]he injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust. For that injury, including all resulting damages the defendant was then liable. The disease of the lungs was a consequence of that injury. Its result might be delayed or, perhaps, even by good fortune averted; nevertheless, the disease resulted naturally, if not inevitably, from a condition created in the plaintiffs body through the defendant’s alleged wrong” (id., at 301 [emphasis supplied]).
In Schwartz v Heyden Newport Chem. Corp. (12 NY2d 212, supra), this Court, albeit not without some reluctance (see, id., at 217-218), adhered to Schmidt in holding, as a matter of law, that the injury to the plaintiff occurred in 1944, when a chemical was injected into his sinuses to make them perceptible in X rays, rather than 13 years later when a consequential cancer of the eye was detected. In Thornton v Roosevelt Hosp. (47 NY2d 780), a differently constituted Court was asked to revisit and overrule the Schmidt doctrine in a case also involving the injection of a dye into the sinuses for X-ray purposes which subsequently caused cancer. The Court was urged to adopt, as one alternative test for the time of occurrence of tortious injury, "the date when, regardless of whether [the plaintiff] then became aware of it, the injury process first started to work on her body” (47 NY2d, at 783, supra [Fuchs-berg, J., dissenting] [emphasis supplied]). Adoption of that *453 criterion would have required reversal for a resolution of the open question of fact as to when the injury process actually started (id. [Fuchsberg, J., dissenting]). Nevertheless, the Court held that "when chemical compounds are injected into a person’s body, the injury occurs upon the drugs introduction” (id., at 781).
Even more to the point for purposes of the instant case, in Matter of Steinhardt v Johns-Manville Corp. (54 NY2d 1008, remittitur amended 55 NY2d 802, appeal dismissed and cert denied 456 US 967), this Court affirmed summary judgment dismissing as time-barred the cause of action for a plaintiffs mesothelioma, caused by earlier inhalation of asbestos, the same etiology on which Mrs. Consorti’s loss of consortium cause of action is based. In doing so, the Court found irrelevant plaintiffs medical proof which is indistinguishable from that relied upon here by the District Court to sustain Mrs. Consorti’s loss of consortium claim: "that the properties of particles of asbestos are such that their inhalation will not necessarily result in the contraction of the disease; * * * that, even if a cancerous tumor later forms, it will not have begun to do so at the time of exposure; that, before such an event will occur, the asbestos may lay dormant for years” (id., at 1013 [Fuchsberg, J., dissenting]). Thus, according to the dissent in Steinhardt summary judgment was precluded because a question of fact was presented as to the date of injury, that is, "when the damaging disease came into existence” (id.). Here, the District Court resolved that same issue of fact in plaintiffs favor, determining on the basis of the medical proof that "Consorti was not injured (i.e., he did not have mesothelioma) prior to his marriage” (In re New York Asbestos Litig., 847 F Supp 1086, 1104). Thus, the District Court’s decision here is in irreconcilable conflict with the result in Matter of Steinhardt.
Nor do our more recent cases offer support for plaintiffs position. Once again, in Fleishman v Lilly & Co. (62 NY2d 888, remittitur amended 63 NY2d 1017, 1018, cert denied 469 US 1192), a majority of this Court refused to depart from the Schmidt doctrine equating injury with exposure to the toxic substance, that is, its introduction into the body, despite the urging of the dissent that "at the very least, a true date of medical-injury should be adopted for the accrual of the causes of action” (62 NY2d, at 892, supra [Cooke, Ch. J., dissenting]). Most recently, in Snyder v Town Insulation (81 NY2d 429), we again expressed our adherence to the rule that the tortious *454 injury is deemed to have taken place upon introduction of the toxic substance into the body. In Snyder, we quoted from our decision and that of the Appellate Division in Matter of Steinhardt v Johns-Manville Corp. (54 NY2d 1008, supra): "[in Steinhardt], we 'reaffirmed] the principle announced in Schmidt and followed in Schwartz’ * * *. That principle had been stated correctly in the decision of the Appellate Division, the order which we affirmed in Steinhardt: ' "The injury occurs when there is a wrongful invasion of personal or property rights and then the cause of action accrues” ’ (78 AD2d 577, quoting Schmidt, and citing Thornton and Schwartz)” (Snyder v Town Insulation, 81 NY2d, at 434-435, supra).
Thus, through succeeding generations of Judges composing this Court, over some 60 years, the Schmidt rule fixing the occurrence of tortious injury as the date when the toxic substance invades or is introduced into the body, has been reconsidered and reaffirmed, despite importunings that adoption of a medical date-of-injury standard would achieve more just results. Nothing has been presented here to warrant departure from Schmidt and the resultant destabilizing of what is now a settled, certain principle of New York tort law. It follows that, as a matter of law, Mr. Consorti’s tortious injury occurred when he was exposed to and inhaled asbestos during the 1960s, before his marriage, and that Mrs. Consorti has no viable loss of consortium claim.
Accordingly, the certified question should be answered in the negative.
Chief Judge Kaye and Judges Titone, Bellacosa, Smith and Ciparick concur; Judge Simons taking no part.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.