Sept. 10, 1997.

**Judith ANTHOLZNER, et al., Plaintiffs,**

v.

**KEY TRONIC CORPORATION, et al., Defendants.**

**No. 94–CV–88C(F).**

United States District Court, W.D. New York.

Dec. 24, 1997.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria (Marybeth Scarcello, of Counsel), Buffalo, NY, for Plaintiff.

Damon & Morey LLP (Thomas J. Drury, of Counsel), Buffalo, NY, for Key Tronic Corp.

Peltz & Walker (Alexander Peltz, of Counsel), New York, NY, for Lockheed Corp.

Walsh, Roberts & Grace (Mark P. Della Posta, of Counsel), Buffalo, NY, for Ontel Corp. and Visual Technology Inc.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B), on October 4, 1995. On, September 12, 1997, Magistrate Judge Foschio filed a Report and Recom-

mendation, recommending that defendants' motions to dismiss and for summary judgment be denied. Defendants filed objections to the Report and Recommendation, which were subsequently withdrawn.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motions to dismiss and for summary judgment are denied in all respects.

IT IS FURTHER ORDERED that the parties shall appear in Part II of this Court at 9:00 a.m. on January 14, 1998 for a meeting to set trial date.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. John T. Curtin on October 4, 1995 for report and recommendation on any dispositive motions. The matter is presently before the court on Defendants Ontel Corporation and Visual Technology Incorporated's motion for summary judgment, filed January 22, 1997; Defendant Key Tronic Corporation's motion for summary judgment, filed January 24, 1997; and Defendant Lockheed Corporation's motion for summary judgment, filed January 31, 1997.

### BACKGROUND

Plaintiffs, Judith Antholzner and Richard Antholzner, filed this diversity action on February 7, 1994. Plaintiff Judith Antholzner alleges that she suffered personal injuries during the course of her employment at the New York Telephone Company from the period beginning June 18, 1990 until the time of the filing of the complaint. Plaintiff's position required her to utilize an Ontel Keyboard Model OP–1/15, manufactured by Key

Tronic Corporation and distributed by Lockheed Corporation. Plaintiff contends that the use of the computer keyboard in question caused her to suffer a cumulative trauma injury.

On January 22, 1997, Ontel Corporation, and Visual Technology Incorporation filed a motion for summary judgment against Plaintiffs on the ground that Plaintiffs' claims were barred by the applicable statute of limitations, along with a supporting memorandum of law. Key Tronic and Lockheed filed similar motions and memoranda on January 24, 1997 and January 31, 1997, respectively. Plaintiffs filed an affidavit in opposition to Defendants' motions on February 14, 1997. Ontel Corporation and Visual Technology Incorporation filed a reply brief and a reply affidavit in support of their motion on February 21, 1997. No oral argument was deemed necessary.

For the reasons as set forth below, Defendants' motions for summary judgment should be DENIED.

### FACTS

Judith Antholzner began working at the New York Telephone Company in Lockport, New York on June 18, 1991. Antholzner was employed as a directory assistance operator, working approximately five days per week, seven hours per day. Antholzner's job duties included inputting and retrieving information from a computer system, utilizing an Ontel keyboard, manufactured by Key Tronic, and distributed by Lockheed.

Antholzner first began experiencing symptoms of repetitive stress injuries, such as numbness and tingling, in December, 1991. Antholzner was diagnosed with bilateral carpal tunnel syndrome in September, 1993. Antholzner filed a written accident report with the New York Telephone Company relating to her injuries in September, 1993, and, at that time, began to take the prescription drug Relafen to control the swelling and stiffness. In November, 1993, Antholzner began taking Relafen on an as needed basis because she experienced some side effects from the drug. On January 6, 1995, Antholzner underwent surgery, a right carpal tun-

nel release. Antholzner did not work from January 6, 1995 until March 6, 1995, at which time she was able to return to her job. Antholzner has used bilateral wrist braces to support her hand and wrist since 1994. According to Antholzner, she continues to suffer from pain, numbness and tingling in her arms, hands, wrists, and fingers, as well as her upper arms.

## DISCUSSION

Defendants have moved for summary judgment on the ground that Plaintiffs' claims are barred by the statute of limitations. Defendants contend that as Judith Antholzner's first contact with the computer keyboard at issue in this lawsuit was in 1990, four years prior to the filing of this complaint in February, 1994, Plaintiffs' claims must be dismissed as the complaint was not filed within three years of her first contact with the computer keyboard. Plaintiffs assert, however, that the statute of limitations period did not begin to run until Antholzner began to experience symptoms of her injuries in December, 1991, and was diagnosed with carpal tunnel syndrome in September, 1993, and that, as such, Plaintiffs' complaint, filed on February 7, 1994, was filed within the applicable three year statute of limitations period.

Absent certain specific exceptions, not relevant here, personal injury actions in New York must be commenced within three years from the date of injury. N.Y. Civ. Prac. L. & R. ("CPLR") §§ 214, 214–a, 214–b, 214–c, 215. CPLR § 203 states that "the time within which an action must be commenced ... shall be computed from the time the cause of action accrued to the time the claim is interposed." *Geressy v. Digital Equipment Corporation*, 1997 WL 297679 at *7 (E.D.N.Y.1997) (citing CPLR § 203). When the statute of limitations begin to run "depends on a nice balancing of policy considerations," *Victorson v. Bock Laundry Machine Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275, 279 (1975) reflecting "the manufacturer's interest in defending a claim before his ability to do so has deteriorated through passage of time,

on the one hand, and, on the other, the injured person's interest in not being deprived of his claim before he has had a reasonable chance to assert it." *Martin v. Edwards Laboratories*, 60 N.Y.2d 417, 469 N.Y.S.2d 923, 457 N.E.2d 1150, 1155 (1983). As the New York Court of Appeals has not yet ruled on the issue of when an injury occurs in a claim based on repetitive stress injuries, the court must examine the lines of cases addressing the accrual of actions where the development of the condition for which damages are sought was not immediately apparent to the plaintiff.[1]

The first line of cases in New York began with *Schmidt v. Merchants Despatch Transportation Co.*, 270 N.Y. 287, 200 N.E. 824 (1936). In *Schmidt*, the plaintiff inhaled silicone dust during the course of his employment, and years later contracted a disease of the lungs known as pneumoconiosis or silicosis. The defendant claimed that the action was time-barred, as the statute of limitations period began to run on the date that the plaintiff began to inhale the silicone dust. The plaintiff argued that the statute of limitations period began to run on the date when his disease came into existence. The Court of Appeals defined the rule of accrual, stating that a cause of action accrues "when substantial damage may result from any wrong affecting the person or property of another." *Schmidt, supra*, at 827. As the plaintiff's injury was "complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust," *Schmidt, supra*, at 827, the statute of limitations period began to run on the date on which the plaintiff began to inhale the dust, thus rendering his lawsuit time-barred. In so ruling, the court stated that "a cause of action accrues only when the forces wrongfully put in motion produce injury," *Schmidt, supra*, at 827, and, in that case, the forces wrongfully put in motion were a result of defendant's negligence in causing the plaintiff to inhale the dust. This ruling has long been applied to injuries resulting from the inhalation, in-

---

1. The New York Court of Appeals is hearing argument this month in the case *Blanco v. American Tel. & Tel. Co.*, 223 A.D.2d 156, 646 N.Y.S.2d 99 (1st Dep't.1996), *lv. to appeal granted*, 234 A.D.2d 239, 652 N.Y.S.2d 503 (1st Dep't.1996), on the issue of when an injury occurs in a claim based on repetitive stress injuries for purposes of the statute of limitations.

gestion, or injection of harmful substances into the body.[2] *Piper v. International Business Machines*, 219 A.D.2d 56, 639 N.Y.S.2d 623, 625 (4th Dep't.1996).

A second line of cases deals with actions involving foreign objects accidentally left in people's bodies. In those cases, courts have held that the statute of limitations period begins on the date on which "the patient could have reasonably discovered the malpractice." *Flanagan v. Mount Eden General Hospital*, 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969). Noting that following the *Schmidt* rule would require that the statute of limitations period begin to accrue at the time of the negligent failure to remove the objects, the court held that a fair assessment of the policy balance required that the statute begin to run at the time the patient discovered the foreign objects as "the burden of defending a 'stale' claim was not sufficient justification for the harsh consequences to the injured claimant were the *Schmidt* rationale applied." *Martin, supra*, at 1154–55 (discussing *Flanagan*).

The third line of cases "deals with products which remain entirely outside the body but through defect cause personal injury to a remote user long after being sold by the manufacturer." *Martin, supra*, at 1155. In *Martin*, an artificial aortic valve was implanted in the plaintiff's decedent in 1976. The decedent died in 1979, and an action was commenced in 1981, alleging that Teflon particles from the valve lodged in decedent's brain ultimately causing his death. The defendant moved to dismiss the complaint on the ground that it was time-barred under the *Schmidt* rule. The plaintiff argued that the time to sue commenced when the injury from the breakdown of the value occurred, which, in that case, was within months of the decedent's death. The New York Court of Appeals held that the limitations period began to accrue when the injury-causing malfunction of the product occurred, in that case when the fragments separated from the

valve, as opposed to the date of the implantation of the device. The court stated that "prior to the injury, the user of the product had no cause to complain, nor, lacking privity with the manufacturer, any ground upon which a claim could be made." *Martin, supra*, at 1155. Distinguishing *Schmidt*, the court stated that "in the inhaled, ingested or injected substance cases in which [a date of insertion or implantation as the injury date] does apply, the forces of harm are inexorably set in motion when the substance enters and is assimilated into the body ... [a]n implanted or inserted device intended to perform a continuing function, to the contrary, causes no injury until the product malfunctions [and] [u]ntil that time the recipient ... has no cause to complain." *Martin, supra*, at 1155.

Courts applying these cases to repetitive stress injuries have reached differing results. In *Blanco v. American Telephone and Telegraph Co.*, 223 A.D.2d 156, 646 N.Y.S.2d 99 (1st Dep't.1996), numerous plaintiffs alleged that, over time, they were injured by the use of data entry keyboards manufactured by the defendants. The trial court dismissed the claims as time-barred under N.Y.Civ.Prac. L. & R. § 214. On appeal, the plaintiffs argued that CPLR § 214–c was applicable to the case and that the statute of limitations period did not begin to run until the discovery of the plaintiffs' injuries, as opposed to the date on which the plaintiffs were first exposed to the allegedly defective keyboards. The court held that CPLR § 214–c was inapplicable as a keyboard could not be found to be a substance, toxic or otherwise. *Blanco, supra*, at 102. The court then went on to determine the date on which a cause of action for repetitive stress injuries could be held to accrue. The court reviewed decisions of the New York Court of Appeals in *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 599 N.Y.S.2d 515, 615 N.E.2d 999 (1993) (relating to the inhalation of emissions from ureaformaldehyde foam insulation installed in a resi-

---

2. In 1986, the New York legislature enacted N.Y.Civ.Prac L. & R. § 214–c which provides that actions to recover for the latent effects of exposure to toxic substances accrue on the date of discovery or the date when through the exercise of reasonable diligence the injury should have been discovered, rather than the date of initial exposure. Because Defendants' computer keyboard can not be fairly considered to be a toxic substance, this section is not applicable to the instant case.

dence) and *Consorti v. Owens–Corning Fiberglas Corp.*, 86 N.Y.2d 449, 634 N.Y.S.2d 18, 657 N.E.2d 1301 (1995) (relating to the inhalation of asbestos), and citing *Schmidt*, held that injuries from repetitive ·motions were not distinguishable from injuries caused by repeated and long-term exposure to hazardous substances. *Blanco, supra*, at 104. The court therefore held that each plaintiff's cause of action accrued upon the commencement of their use of the allegedly defective keyboard, notwithstanding the fact that the injury did not manifest itself until a later time. *Blanco, supra*, at 104. The actions were dismissed as time-barred.

In contrast, in *Piper v. International Business Machines*, 639 N.Y.S.2d 623 (4th Dep't.1996), the Appellate Division, Fourth Department, held that the three year limitations period applicable to a worker's action against a computer keyboard manufacturer commenced to run when she first experienced symptoms of the injury, rather than on the date of first use of the keyboard. In *Piper*, the court rejected the *Schmidt* rule, holding that under that rule, "a cause of action might be barred before liability arose." *Piper, supra*, at 626–27. Instead, the court followed the reasoning espoused in an unreported case, *Wallen v. American Tel. & Tel. Co.*, Sup.Ct. Bronx Cty, Sept. 17, 1992, Saks, J. index no. 12336/91, *aff'd*, 195 A.D.2d 417, 601 N.Y.S.2d 796, *lv. denied*, 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993) where the accrual date was measured from the earlier of two dates: either the plaintiff's last use of the computer equipment, or the onset of the plaintiff's symptoms. *Piper, supra*, at 626. The court distinguished the case from the toxic tort exposure cases, noting that the case did not present a situation where "the forces of harm [were] inexorably set in motion" when the plaintiff was first exposed to the injury-causing product. *Id.* Rather, setting the accrual date at the time of onset of the symptoms reflected a policy which permitted a plaintiff to not be unreasonably denied an opportunity to bring a claim, while at the same time, not giving a plaintiff the power to put off the running of the statute of limitations indefinitely until such time as the action nature of the injury was discovered. *Id.*

In *Dorsey v. Apple Computers*, 936 F.Supp. 89 (E.D.N.Y.1996), the court followed the reasoning of *Piper*, and specifically stated that the holding in *Blanco* "cannot be accepted as an accurate statement of New York law." *Dorsey, supra*, at 92. The court stated that "there is a distinction in the cases between external substances that have somehow been absorbed or integrated into a person's body and those that have not." *Id.* Citing *Martin*, the court stated that "where a foreign item has not been assimilated," and the courts have been able to fix a date of harm, the New York courts use that identifiable date of injury as the beginning of the statutory accrual period. *Id.* In contrast, where the external substance has been integrated into a person's body, New York courts have found the date of the onset of symptoms to be the "closest approximation [they] could reasonably make to the date of injury." · *Id.* Thus, in *Dorsey*, ·the court held that, based on plaintiff's allegations, the action was most likely not time-barred as the symptoms of plaintiff's injuries appeared to have occurred no earlier than thirteen months prior to the filing of her suit. *Dorsey, supra*, at 92–93.

Later, in *Geressy v. Digital Equipment Corp.*, 1997 WL 297679 at *6 (E.D.N.Y.1997), ruling on a complaint filed in March, 1994, the court, ruling on post-trial motions, applied the rationale espoused in *Piper* and *Dorsey*, and held that causes of action were not viable on statute of limitations grounds for injuries where symptoms were first noticed prior to March, 1991. *See also Evans v. Visual Technology Incorporated*, 953 F.Supp. 453 (N.D.N.Y.1997) (following rule that statute of limitations period commences upon onset of first symptoms); *Coughlin v. International Business Machines*, 225 A.D.2d 256, 650 N.Y.S.2d 477 (3rd Dep't. 1996) (same).

■ Analyzing the cases,··this court finds that the exposure cases cited in the *Blanco* decision are distinguishable. In the referenced cases, each of the offending substances was one in which common knowledge available at the time showed that the particular substance by its very nature was hazardous to the human body, *i.e.*, silicone dust, asbes-

tos and ureaformaldehyde fumes from insulation. Thus, the inhalation of these substances were harmful to the human body, creating an acute or physical injury however small the first time they were inhaled. The same cannot be said of injuries alleged to be caused by use of computer keyboards or other similar devices. Such injuries, if they even actually exist, are only the result of repetitive use of the device at issue. Lawrence Chesler, *Repetitive Motion Injury and Cumulative Trauma Disorder*, N.Y.S. BAR JOURNAL, December, 1993, at 12 ("repetitive motion injury, also known as cumulative trauma disorder (CTD) or repetitive strain injury (RSI) is now the leading cause of occupational illness in the United States"). RSI and CTD are "umbrella terms" which refer to any painful condition of the neck, shoulder, arm or hand in workers who engage in repetitive physical duties. *Id.* If repeated use of a computer keyboard or other device alleged to be defective is required before any injury can be detected, it follows that such injury, by its nature, does not occur upon first use by a plaintiff. The distinction between the date of injury as formulated by the New York Court of Appeals and the date on which the injury is diagnosable was recognized in *Piper*, which applied a test of the date of "first onset of symptoms" as the date of first injury under the New York general accrual rule. *Piper, supra,* at 626. This court agrees with that distinction. As stated in *Schmidt*, "[j]udicial decision cannot be based soundly upon dialectical distinctions or rigid application of purely formal concepts." *Schmidt, supra,* at 826. In cases involving the use of allegedly defective equipment alleged to cause injury through repetitive use or contact, such as the computer keyboard at issue in the instant case, the date of accrual cannot be the date of first use or exposure, as there is no objective reason to believe that harm to the human body could conceivably occur at that time. The injury, if it is actionable at all, must necessarily occur at a later time. That date must be determined by reference to a plaintiff's pleadings, medical records, and other testimony showing the first onset of symptoms. Such a test of accrual is not dependent upon medical testimony, but turns on other evidence, specifically the plaintiff's own complaints of symptoms. Accordingly, a date of onset of first symptoms or the last date of use test for cases of the kind at bar does not violate the Court of Appeals' disapproval of a "fact-based date of medical injury test," as rejected in *Consorti, supra,* at 1302.

■ In the instant case, Antholzner claims that she first experienced symptoms of repetitive stress injuries in December, 1991 and that she was diagnosed as having bilateral carpal tunnel syndrome in September, 1993. This action was filed on February 7, 1994, within the three year statute of limitations period which commenced in December, 1991, the date of first onset of Antholzner's symptoms. As such, Defendants' motions for summary judgment on the ground that the action is barred by the statute of limitations period is must be DENIED. At trial, Antholzner will present evidence to the trier of fact to establish the date of first onset of her symptoms as occurring in December, 1991. Only if Defendants can persuade the trier of fact that Antholzner's symptoms first occurred more than three years prior to the commencement of this action, will they succeed with their statute of limitations defense. *Dorsey, supra,* at 92.

### CONCLUSION

Defendants' motions for summary judgment (Docket Nos. 14, 17, and 20) should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

September 12, 1997.